21-1384, Boulter v. Noble Energy. Good morning. My name is George Barton. I'm arguing for the appellants who I will typically refer to during this oral argument as the royalty owners. This case arises out of a breach of contract claim that was asserted by the royalty owners for royalty owner payments related to the deduction of various post-production costs and the calculation of their royalties. I want to first sort of focus on the first argument we have which is that the district court erred in determining that the June 2021 decision by the Colorado Court of Appeals in airport land did not constitute a change in the applicable legal context and did not reflect a holding that it would clearly be futile for the royalty owners in this case to exhaust their administrative remedies with the commission. And I want to pursue that with you, counsel. Why didn't you appeal that in the first case? Because at that point, Judge Baldock, there was an order that had been entered by the Denver District Court, Judge Hoffman, that had vacated all five of the commission orders which had concluded that the to resolve the royalty owners breach of contract claim. So we're not here not only on the first case, we're not here on the second case, we're here on the third case. Is that right? We're the same issue? Well, this is the case we're here on is the second case. Counsel, is that right? We're here on the third appeal or the second appeal or both of them? Well, we're here on the both or one was the case that Judge Martinez had. And that was the case where Judge Martinez decided that the commission or basically that the royalty owners did have a duty to first exhaust their administrative remedies with the commission. And then after Judge Martinez's decision was entered, the Colorado Court of Appeals in the airport land decision that was 23rd, 2021, reversed Judge Hoffman's September 12th, 2019 decision. Is that your position that there's been a change in the law? That's correct. And the change in the law came about as a result of the fact that as of the date that Judge Martinez issued his decision in Bolger 1, which was February 17th, 2021, the applicable decision that was still intact was Judge Hoffman's ruling from the Denver District Court reversing all five of the commission orders that it did not have jurisdiction to decide the royalty owners breach of contract plan. He had reversed the commission and remanded the case back to the commission to exercise jurisdiction. Where I'm going with my questions, obviously, to you, and you understand, is the issue preclusion of the race to cut it. That's right. Okay. All right. Thank you. And so what I'm explaining is that the June 3rd, 2021 decision of the Colorado Court of Appeals did constitute an intervening change in the applicable legal context because it reversed Judge Hoffman and reinstated all five of the commission's orders finding that it does not have jurisdiction to decide any royalty owners breach of contract claim where there's a dispute over the amount of royalties due. And so it's a very, all five of the commission orders were very broad decisions in which the, and I'm just quoting some of this, the commission concluded that the legislature did not intend for the commission to have jurisdiction over royalty disputes where the rights and obligations of the parties are determined by a contract, particularly where resolving the dispute would involve the application and complex or application and interpretation of complex legal principles. Let me, let me ask. So in the first case, what the district court said was you lose because whether it's futile, not futile, we can't decide anything here until you first present it to the commission for them to make a determination of their jurisdiction. That's what Judge Martinez said. Okay. That's correct. So then you file a new suit and at the, that's the same. And at the time you filed the new suit, the law had not changed. That's true. But the reason for, let me just back up. The reason we had to file the new suit is we, there's a statute and we mentioned it at page three of our opening brief. There's a statute that requires us to file a new suit within 90 days after a dismissal for lack of jurisdiction, which is CRS section 13-80-111. We've got to do that to preserve our statute of limitations. These royalty underpayments go back more than six years. Okay. And if we don't do that, then we are in all probability going to have our claims barred by the statute of limitations. And so that's the reason we filed the second case in the first instance. No, I understand. Okay. So I'll, I'll give you that. I'll give you that. Maybe you had a, had a strategy for, for filing your case. Well, it's not just a strategy. It's an obligation to not be barred by the statute of limitations. Well, I mean, there, there can be arguments about that. I guess I have a hard time believing that there's a statute that says if you file a suit and you lose that you can, you must file the exact same suit that has been deemed to be without merit again within 90 days, even though it would be subject to basically immediate dismissal or, or you, or the statute, or you, the statute runs. I, it just seems that there could be arguments about that. So, I mean, it's, I'll give it, if you want to think it's a requirement, that's fine. But then as your second suit is pending, this Antero case, is that the name of it? It's the airport land versus Antero. The airport land case comes out. And, but that case didn't change the principle on, upon which Judge Martinez decided your first case, did it? I, I, yes, we believe it did because once the, when we got to the court of appeals, they made a, a, an affirmative determination that the, the commission does not have jurisdiction over any breach of contract claim when the royalty owner's, when the issue is the royalty owner's legal right to additional royalty under payment, additional royalty payments under a contract. No, I understand that. So, so at that point. I mean, he may have been wrong. He may have been wrong on what he decided, but that's not the issue. The issue that he decided was not the issue that the Colorado court of appeals decided. The court of appeals decided, hey, the commission doesn't have jurisdiction over these, over these contract claims. And, well, but he, but he never said that it was futile, not futile. He just said before I'm going to decide, you've got to take it to the commission. I'm not going to decide anything until you take it to the commission in the first sentence for them to decide that whether they have jurisdiction or not. Well, actually, Judge Martinez rejected our argument, Judge Carson, that it would be futile for the royalty owners to exercise their breach of contract remedies with the commission. We specifically argued that and he rejected that and said, no, I don't think it would be futile. And I think that the statutory basis for it. And ultimately, though, his decision boiled down to whether you're right, whether you're wrong, you don't get to bring it here until you take it there first. That's what Judge Martinez held. Right. And at that point, of course, the five commission orders that were issued in July of 2018 had been vacated by Judge Hoffman. Right. But those aren't precedential. Those don't, those district court orders don't change any law. Well, I'm talking about what Judge Hoffman had done is he had vacated the five commission orders. And so then it goes up to the Court of Appeals and the Court of Appeals reverses Judge Hoffman's orders and reinstates the commission orders, wherein the commission in those five jurisdictional orders specifically held what I just read. I understand. But that wasn't the, that reversal was not based on the issue that he dismissed your case on. He dismissed your case on a procedural issue that you didn't go there, go to the commission first. The airport land decision, they, you know, based its decision on the fact that there was no jurisdiction in the commission. Those are two different things. One of them is you took the wrong step first. And the other one is, is they didn't have jurisdiction. But the Court of Appeals, by reversing Judge Hoffman and reinstating the five commission orders of July 2018, that decision establishes clearly that it would be completely futile for the royalty owners to exhaust, first exhaust their... Yeah, I'm not, I'm not, I'm not disagreeing with that. But go ahead. But well, and so that therefore the effect of the Court of Appeals decision is that the royalty owners should not have an obligation to first exhaust their breach of contract remedies with the commission because it would be completely futile to do so. And that's, that was the effect of the Court of Appeals decision. All right, counsel, let me jump back in here. Okay. You filed a suit. In the first case, Judge Martinez, I guess, was the district court judge that handled that issue in that case in which you lost. You had a rule that you felt within, that says specifically within 90 days, you have to do something. You have to file a new lawsuit. Okay. Or you have a statute of limitations. So how does that interfere with your authority to appeal Judge Martinez's case if you felt he was... Because all of your arguments had you appealed that would have come into play in that first case. Well... Right? No? Is that right or not? Well, the arguments that, that were available to us at the time that Judge Martinez entered his order of dismissal, we were at a point in time where at that point, Judge Hoffman had, entered the orders vacating the five commission orders. That doesn't matter. You have the 90 days in which to do something. But that 90 day requirement does not in any way, shape, fashion, or form deny you the right to appeal Judge Martinez's order. Isn't that right? It does not. That's true. Okay. But... So you said you had to do this, but that's where I come back to why all of this could not have been raised in the first case had you appealed it. Because it all subsequently happened bang, bang, bang after that. But what's the change in the applicable legal context, which has happened Judge Baldock, is that since Judge Martinez's order was issued in February of 2021, the court of appeals has issued a decision in which it reversed Judge Martinez's order. Yes. Okay. That has nothing to do with us over here. You had an issue from a federal district judge that was subject to being appealed. Right. We did. But that, at that point, the applicable legal context for the Colorado law that Judge Martinez was dealing with was that, you know, all five of the commission orders that were issued in July 2018 proclaiming that the commission does not have jurisdiction over any dispute where the royalty owner is asserting a claim for additional royalty payments, all that had been vacated by Judge Hoffman. And the significance of the airport land, the court of appeals decision, is that it reversed that. And it reinstated all five commission orders in which the commission said unequivocally that it does not have jurisdiction over these types of claims. And of course, now we have a situation where that airport land appeal is up before the Supreme Court of Colorado. And that was argued a week ago today, and we're going to get a decision from the Colorado Supreme Court on this same issue. So I'm going to reserve the rest of my time. May it please the court. I'm Shannon Stevenson on behalf of the appellees Noble Energy and Kerr McGee. I think the court is attuned to the fact that the procedural posture of this case is critically important to its resolution. As you guys were just discussing, this plaintiff has filed this case four separate times. In the first case, Judge Martinez evaluated the motion to dismiss for failure to exhaust and said, no, you need to go exhaust, present this question to the Oil and Gas Commission first and have them decide whether or not they have jurisdiction. That order was not appealed, and it is not on review here. Plaintiffs after that filed the case again. Judge Moore said this was already decided. Go exhaust your remedies. They filed it again. Judge Moore said again, this has already been decided. Go exhaust your remedies. They've now filed it again. We've moved to dismiss again. And that case is pending. Is there a fourth case pending in federal district court? That is correct, Your Honor. So this obviously is, again, an unusual procedural posture, but it highlights the importance of issue preclusion, which is the issue that is before this court today. And the only way that the plaintiffs can avoid the holding of Bolzer Martinez and Bolzer 1 is if they can show a significant change in the applicable legal context that occurred after that Bolzer 1 opinion. And the unpublished decision of the Colorado Court of Appeals in the Antero case or the Airportland case does not meet the criteria to establish that intervening change in law. And I want to talk through the reasons for that. The cases that talk about intervening change in law, particularly the United States Supreme Court cases like Herrera, they talk about an intervening change in law happening, for instance, when the Supreme Court has repudiated its own prior opinions, where there has been a major and significant change in controlling the legal precedent. Those are the types of words that are used and the type of context where the courts have said, yes, there's been a substantial enough intervening change in law that you're going to be allowed to re-litigate the same issue that you already lost, and in this case, failed to appeal. So tell us how the timing affects this, because it seems to me to benefit from the change, even assuming there was a change in the law, that to benefit from the change in the law, you have to file your next suit after the change in And it feels to me here like we have a case, plaintiffs lose. They re-file the same case when the state of the law, as they know it at least, is, you know, basically makes their filing frivolous. And then they luck into a court of appeals opinion, and it seems that at least some of the authorities around the country, although they're scant, suggest that to benefit from the change in the law before you file your next case. We believe that to be correct, Your Honor. And again, it's very clear here that they were not filing these cases based on the intervening change in law. One, because they filed it before the intervening change in law happened, so they could not have had the prescience to do that. Second, they state in their complaint, and Mr. Barton confirmed here today, that the reason they're doing this is not because of an intervening change in law, but because of their perception of the effect of some statute of limitations, a statute they need to comply with. Finally, they keep re-filing the case, and obviously there have been no changes of law since the Antero opinion came out. So for Bolter 3 and Bolter 4, there could be no argument that there was any intervening change in law. So we know that's not their reason, and I think you're correct that for that to be a persuasive argument, they needed to do it after this purported change in law. And I would direct the court on that point specifically to the Golden's Concrete case. That's 962p2 at 924, and it makes this exact point, which is you can't wait for a subsequent precedent to come out, and then try to avoid the impact of a prior decision. So I agree with you on that point. Okay, now let me ask you about whether there was a change in the law, because at least it's a very close call as to whether what was said in the Airport Land case was nothing different than what was said in the Grindberg case. Well, regardless of whether it was nothing different or a little bit different, I want to come back to this standard for intervening change in the law, which again is a really significant change, like repudiating control and precedent. And there's just no way the Antero case can rise to that level. It is an unpublished decision with no binding precedential effect. Well, let me stop you there, because it obviously affects the parties. The parties to that case? Yes. So are you suggesting that that would not affect our parties here? Correct, Your Honor. I don't think it would be binding on any other parties that were to present those issues. They'd be free to make other arguments. You think it has no effect at all? I don't. I mean, even a district court would not be bound to follow it because it's unpublished. Certainly, this court would not be. And also, the opinion itself makes clear that it is doing nothing more than continuing the principles of the Grindberg case from 20 years earlier. If you look at the Antero case, when it's talking about Grindberg, it says this case has facts that are strikingly similar to that case. So it's just announcing, it's re-announcing the law. It's just applying the existing law. It says that Grindberg is indistinguishable. Okay, so then how do you account for their district court opinion that said there was no jurisdiction dismissing the case? Their district court? In this case, Judge Hoffman says there's no jurisdiction. Ah, right. Did he just get that wrong? Well, I mean, he had a different view, but I want to talk specifically about opposing counsel's point that because there was a reversal of a lower court decision, that that is the type of intervening change in law that could provide them an exception from issue preclusion. That can't be right. I mean, any time a court of appeals reverses a district court, that's not an intervening change in controlling precedent. That's just a reversal of a non-binding district court opinion. And so, the fact that the commission decided one thing and then the district court decided another, and the court of appeals eventually, you know, sided with the commission, that that just does not meet the standard for an intervening change in the applicable legal context. The applicable legal context was Grindberg, which the court of appeals just followed. Well, then how do you... I mean, their argument is we have a binding opinion on them that said there was no jurisdiction, and then now there's an opinion out of the court of appeals that says there is jurisdiction. What do you do with that? Well, again, I mean, that only applies to the parties to that case, which are none of the parties to this case, just to be clear. Okay. And so, look, those are applications, courts differing over an application of a legal principle in one particular case. But again, to come back for them to be accepted from the policy of issue preclusion, to get a second chance to re-litigate an issue that they could have appealed that first time, and all of the arguments that they want to make now, all of those arguments were available to them to make on appeal in Bolter 1 if they wanted to. There's been no new law that has given them new arguments to make that they wouldn't have had already at that time. If you look back to their briefing in Bolter 1, it's making the exact same substantive arguments that they say the Antero case would let them make now. It's the exact same interpretation of those words, bona fide dispute of contract interpretation. All the arguments are the same. And I think they even concede, the plaintiffs even concede this point. If you look at their response to the motion to dismiss, and in this case, at appendix page 190, they talk about the fact that the Antero case reaffirmed the Greinberg case. And again, at page seven of their reply brief, they say that, that Antero just reaffirmed the Greinberg case. And having an unpublished opinion reaffirm case law that's been around for 20 years is not, does not meet that high bar for a significant change in controlling precedent that allows you out of issue preclusion. Before you move on, just one follow-up then. So I guess your position on the Colorado Supreme Court consideration of the issue is that that doesn't matter? That is exactly right. Okay. And I'm happy to say more about that. I mean, look, they had to show an intervening change in law prior to filing their complaint, not the possibility that the law could change at some future point in time. And when you think about the policies of issue preclusion, they are finality, they are the preservation of the resources of the court and the parties. You know, we are out of control on resources. We moved to dismiss this case four separate times. We need a ruling that, you know, this particular case is over and decided. And there's not any prejudice to plaintiffs here based on that outstanding potential Colorado Supreme Court decision. If that case results in a significant intervening change in the law, then I think they can file a Bolter V. You know, but they need, they're going to need to show that there really was that kind of intervening change in the law that did not occur based on the Court of Appeals opinion. I guess your take on it is that there are lots of cases where somebody makes a meritorious argument and loses. They actually are right, but they lose. And then later on after courts mull over the decision for years, they rule the other way. And just because you lost before and they changed the law doesn't mean that you get another bite at the apple. Exactly right. And of course it couldn't be because then we would have people trying to re-litigate issues every time, you know, some other decision was reversed somewhere else. They could be coming in to say, oh, well now I get to re-litigate my whole case. And that just can't be the rule. It would violate all of the underlying principles of issue preclusion. And then, you know, the other aspect that they would need to show in order to avoid the effect of issue preclusion is that the Antero decision was in direct conflict with Judge Martinez's decision in Bolter 1. And I don't think they can show that either for the primary reason that the cases are on two different topics. Judge Martinez's opinion is you have to go present, exhaust the question of whether or not the commission has jurisdiction first. That happened in the Antero case so that the question of exhaustion is simply not at issue at all in that case and the court doesn't touch it. And so there just can't be any direct conflict between those two opinions, again, that would warrant plaintiffs taking advantage of this special exception to issue preclusion. Well, they argue futility though, right? Could you just, I'm sorry, I know you wanted to move on, but just could you address the futility argument? Futility is a great place to move to. The problem with their futility argument is that, you know, first they're still having to get out of the issue preclusion box. So they've got to show a significant change in law affecting utility. Talked about the fact that Antero was an unpublished decision. And futility requires that it be futile, it's got to be clear beyond a reasonable doubt that it's futile. And I don't think you can rely on an unpublished decision to say, oh, it's now clear beyond a reasonable doubt. But also point out the case law on futility. I'm not aware of any case where the court has said just because an agency has ruled, you know, contrary to your position a number of times, that that meets the bar for futility. What if there's a substantial body of authority going against you? You may practice before the commission. A lot of these commissions have their own substantial body of internal precedents where these precedents are, or where these cases are presented to them time and again. And if they routinely in pretty much every case rule against you, I mean, isn't that pretty good evidence of futility? Doesn't that support a futility argument? I have not seen case law that makes the holding that you just described. I haven't either, but doesn't it make sense to you that that could be the rule? Not, no, not necessarily. And again, because commissions change over time. They change the way they implement their rules. And here, where there is a direct statutory imperative that the commission has to determine its own jurisdiction, and whether there's a bona fide disputed contract interpretation, that question needs to go to them. And I think the plaintiffs have overstated, you know, their position on this. In the Antero case, they looked at each of those underlying cases and made an independent determination for each one whether there was or wasn't a disputed contract interpretation. Our facts in this case are totally different. I don't know how they're going to come out on that. But for futility to be clear beyond a reasonable doubt, the facts, the fact patterns that generate that kind of holding are things like the plaintiff has asked for the statute that forms the agency to be declared unconstitutional. Okay, everybody knows that that agency can't give that kind of relief, can't make that decision. So that's futility. You're asking for relief that the agency isn't authorized to give. That's futility. But the fact pattern that you just described, it's not in the cases as warranting a futility exception. And again, futility has got to be clear beyond a reasonable doubt. And here, we're still in the box of issue preclusion. So not only does substantial change in law affecting that analysis, and again, back to the unpublished Court of Appeals decision, and Antero just doesn't get the plaintiffs there. And, you know, Your Honors, we would not be here if they had just appealed the Bolter 1 decision. All of the arguments they want to make on these topics were available to them in that time. And we request that you affirm the dismissal of the Bolter 2 and Bolter 3 cases. Thank you. I realize my rebuttal time is short, so there's two things I want to talk about. The dismissal from Judge Martinez was that a dismissal without prejudice and that we were required to exhaust our administrative remedies with the Commission. We've now attempted to do that. We're in front of the Commission. I think we've provided the supplemental authority on this, what's going on there. In the Commission, we filed an initial application asking the Commission to pass that it did not have jurisdiction over our breach of contract claims. At the request of one of the appellees, Noble Energy, they asked that the Commission's jurisdictional determination be stayed pending the outcome of the airport land case that's in front of the Supreme Court of Colorado. And the Commission decided that they would stay our exhaustion of administrative remedies process pending the outcome of the Supreme Court of Colorado decision. Thank you. Your time has expired. All right. Thank you. Thank you, counsel, for your arguments. Counsel is excused.